803 F.2d 927
 123 L.R.R.M. (BNA) 3100
 The TORRINGTON COMPANY and Charles McNerney and Robert
Ellis, in their capacity as members of the Board
of Administration for the Supplemental
Unemployment Benefit Plan,
Plaintiffs-Appellees,
v.
LOCAL UNION 590 OF the INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA, and Thomas Paszek and Arthur Birk, in their
capacity as members of the Administration for Supplemental
Unemployment Benefit Plan, Defendants-Appellants.
 Nos. 84-2861, 85-1592.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 4, 1985.
Decided Oct. 20, 1986.
 
 John A. Fillion, UAW Legal Dept., Detroit, Mich., for defendants-appellants.
 Roger W. Benko, Barnes & Thornburg, Elkhart, Ind., for plaintiffs-appellees.
 Before FLAUM and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 FAIRCHILD, Senior Circuit Judge.
 
 
 1
 The Torrington Company ("Torrington") brought suit against Local Union 590 of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("Union") to enjoin arbitration of "the contribution issue." The issue is whether Torrington was obligated to pay health insurance premiums for laid off workers only when its contributions under a specified formula provided a fund sufficient to pay them. The Union counterclaimed for specific performance of Torrington's contractual duty to arbitrate. The district court ordered arbitration under the Collective Bargaining Agreement but enjoined arbitration under the Supplemental Unemployment Benefit Plan.
 
 
 2
 The Union filed a motion to vacate the judgment under Rule 59(e), Fed.R.Civ.P., accompanied by a motion to amend its counterclaim under Rule 15(a). Although it did not present a proposed amendment, its new theory was that its claim was nonarbitrable and must be litigated before the court. The district court denied the motions and the Union appealed. No. 84-2861.
 
 
 3
 Taking issue with statements of the court in the order denying its Rule 59 motion, the Union filed a motion under Rule 60(b). This motion was denied, and the Union appealed. No. 85-1592.
 
 I. FACTS
 
 4
 Torrington and the Union entered into a Collective Bargaining Agreement ("CBA") on May 1, 1981. That agreement remained in effect until May 1, 1984. Torrington and the Union were also parties to a Supplemental Unemployment Benefit Agreement and Plan, as amended May 1, 1981 ("SUB"). Article XI of the CBA is entitled "Pensions and Insurance." Section 2(f) of Article XI provides: "An employee laid off by the Company will be covered as outlined in the S.U.B. Agreement as provided in Article IV, Section 1, paragraph (b) inclusive. Refer to S.U.B. Section." Article XIV of CBA required Torrington to fund the SUB Plan at five cents per hour per employee.
 
 
 5
 In 1982 Torrington experienced substantial lay-offs. The level of five cent contributions decreased to the point where the total was insufficient to pay the premiums. On October 11, 1982 Torrington advised the Union that because of a lack of sufficient contributions, it was suspending payment of the insurance premiums.
 
 
 6
 The CBA provided three mechanisms for the resolution of disputes: (1) a nonmandatory grievance procedure (Article X, Secs. 2, 4, 5); (2) a strike (Article X, Sec. 13); or (3) at the Union's option and in lieu of strike, arbitration (Article X, Sec. 14(11)).
 
 
 7
 The Union did not strike. It appears to be Torrington's position that arbitration under Article X of CBA is now barred because the Union did not file a grievance nor invoke the arbitration procedure provided in Article X of CBA. It does not challenge the ruling of the district court that any procedural defense is a matter for the arbitrator.
 
 
 8
 Article X of SUB set forth a "Procedure for Appeals by Applicants." The appellate body is a Board of Administration, composed of two members appointed by Torrington and two by the Union. On October 20, 1983, the two Union members filed an appeal before the Board, contending that Torrington had improperly discontinued payment of the insurance premiums. The Board was unable to decide the matter by majority vote.
 
 
 9
 Since SUB called for selection in that event of an Impartial Chairman from the roster of the American Arbitration Association, an arbitrator was chosen to hear the matter June 22, 1984.
 
 
 10
 On June 5, 1984 Torrington instituted this action seeking preliminary and permanent injunctive relief to bar arbitration. Torrington argued that the issue was arbitrable under the CBA and not under the appellate procedure in SUB.
 
 
 11
 The Union filed a counterclaim seeking an order directing Torrington to arbitrate the suspension. The Union claimed that the issue was arbitrable under both Article X of CBA and Article X of SUB.
 
 
 12
 The district court, after noting that both parties agreed that the issue was arbitrable under Article X of CBA, denied Torrington's request for a preliminary injunction.
 
 
 13
 At trial Torrington continued to maintain that the issue was arbitrable under Article X of the CBA, though it was evident it would attempt to establish procedural defenses under that Article. The Union stoutly contended that the dispute was arbitrable under either the CBA or SUB provision.
 
 
 14
 The portion of Article X of CBA which describes the scope of the arbitrator's powers reads: "The Arbitrator can interpret or apply any specific provision of this agreement with the sole exception of the insurance provisions. Deleting from, adding to or modifying the specific provisions is not allowed."
 
 
 15
 Since the parties were arguing over the extent of Torrington's obligation to furnish insurance coverage, it seems quite evident that if Article XI, Sec. 2(f) and Article XIV were deemed insurance provisions, an arbitrator would have no power to interpret or apply them. Judge Grant was alert to this problem and raised it at trial by a question to Torrington's counsel:The Court: Speaking of insurance, Mr. Benko, in your labor agreement you specifically say that the matter of insurance shall not be submitted to arbitration, and now you agree that this is arbitrable under the labor agreement. I don't understand that inconsistency.
 
 
 16
 Mr. Benko: The parties with respect to that clause, Your Honor, were talking about the insurance contract that was provided by Aetna, that they cannot arbitrate the individual provisions of the insurance contract. We're not talking about arbitrating the contract. We're talking about whether or not Torrington violated the collective bargaining agreement by suspending contribution, payments....
 
 
 17
 Union counsel addressed the court immediately thereafter, but took no issue with Mr. Benko's answer. That Union counsel was aware of the exception to which the court referred is evident from his statement in an earlier colloquy:
 
 
 18
 In the Collective Bargaining Agreement I think both sides agree any question involving the interpretation of the Collective Bargaining Agreement except the insurance clause is subject to arbitration, and it is agreed by both sides that under that clause under the arbitration clause in the labor agreement proper this dispute is arbitrable.
 
 
 19
 On July 26, 1984 the court entered judgment denying Torrington's request for a permanent injunction and granting specific performance of Torrington's duty to arbitrate under the CBA. The court enjoined arbitration under SUB. In reaching that decision, the court reasoned that SUB limited the Board's authority to the resolution of specific issues, i.e., (1) "Whether the appeal to the board was made within the time and in the manner specified"; (2) "whether the applicant is eligible for a Benefit or Separation Payment and if so, the amount thereof"; and (3) "whether a protest by the Company of an Applicant's State System Unemployment Benefit is frivolous." Article X, Sec. 5. SUB also limited the appeal procedures to purposes specified in SUB and explicitly states that "The Board shall have no power to determine any question arising under the Collective Bargaining Agreement even though relevant to issues before the Board." Article X, Sec. 5. The court also held that the suspension issue was not a matter of fund administration and thus the provisions of 29 U.S.C. Sec. 186(c)(5)(B) (The Labor Management Relations Act), for court appointment of an impartial umpire, are not applicable.
 
 
 20
 Judge Grant also explained the significance of the decision:
 
 
 21
 At first glance, this issue appears purely academic since the parties must arbitrate under the CBA. However, Torrington will raise procedural defenses to arbitration under the CBA, and accordingly, both parties seek a determination of whether arbitration of this issue is permitted under the Plan. (Footnote omitted.)
 
 II. UNION'S RULE 59 MOTION
 
 22
 On August 6, 1984 the Union filed a motion to vacate the judgment under Rule 59(e). It was timely, August 5 having been a Sunday, and extended the time for appeal from the judgment.
 
 
 23
 In this motion the Union for the first time took the position that its claim was nonarbitrable. Counsel professed to have inadvertently joined in an analytical error. The claim, said the Union, was founded on CBA Article XI, Sec. 2(f), providing that an employee laid off will be covered as outlined in the SUB Agreement as provided in Article IV, Sec. 1, paragraph b; this, it said, was an insurance provision and therefore not arbitrable. It would follow, according to the Union, that it could sue on it claims under Section 301 of the LMRA, 29 U.S.C. Sec. 185(d). It asked leave to file an amended counterclaim for damages.
 
 
 24
 Judge Grant denied the motion, concluding that the Union had failed to show a miscarriage of justice, or manifest error or prejudice. He was unpersuaded by counsel's assertion that he had overlooked the proper contractual basis for his claim, and thus failed to realize that an insurance provision was involved, and the claim thus nonarbitrable. We share judge Grant's incredulity.
 
 
 25
 How counsel could think that the present dispute could be resolved without interpreting both Article XI, Sec. 2(f) and Article XIV of the CBA is beyond our comprehension. We hold that both parties are bound by the position they took that the dispute was arbitrable under Article X of CBA, notwithstanding the exception of "insurance provisions."
 
 
 26
 There was no abuse of discretion in denial of the Union's Rule 59 motion.
 
 III. UNION'S RULE 60(b) MOTION
 
 27
 Reading two remarks in the order denying the Rule 59 motion as erroneous assertions of fact, the Union filed a motion under Rule 60(b), seeking relief from the denial. This court entered an order holding that remand of the record for consideration of the motion was unnecessary unless the district court indicated an inclination to grant the motion.
 
 
 28
 (1) In summarizing the facts of the case, Judge Grant repeated part of the statement of facts in an earlier order to the effect that although the CBA provided three mechanisms with which to challenge the nonpayment of the insurance premiums, "the Union did not avail itself of any of these remedies." To show that the statement is untrue, the Union states that two employees gave depositions stating that they filed appeals, and the Union claims these constituted grievances and were a sufficient predicate for arbitration. Whether or not this particular recitation can be shown to be incorrect, we cannot believe it had any effect on Judge Grant's denial of the Rule 59 motion. It is apparent from the order that the dominant consideration was what Judge Grant referred to as the Union's "180? turn."
 
 
 29
 (2) In discussing the Union's failure to show a miscarriage of justice, Judge Grant suggested that the Union used the appellate procedure under SUB because it realized it had failed to meet the procedural requirements for arbitration under CBA. Judge Grant referred to Torrington counsel's statement that the parties meant something else when they excepted insurance provisions from arbitration and wondered why the Union waited so long to contest it. The Union reads this as a suggestion that it acted in bad faith. We have already indicated that we share Judge Grant's incredulity as to the Union's explanations of its change in position.
 
 
 30
 Judge Grant denied the Rule 60(b) motion on the ground that it sought review of a conclusion of law and therefore the district court had no jurisdiction to consider it, citing McKnight v. United States Steel Corporation, 726 F.2d 333, 337-38 (7th Cir.1984).
 
 
 31
 It does appear that the Union framed its Rule 60(b) motion so as to challenge what it termed "mistakes of fact which influenced the Court's conclusions of law." To that extent, the district court could have considered the motion, but it is clear to us that the two matters we have just discussed were so insubstantial that they could not reasonably have led to vacation of the order denying the Rule 59 motion. Any error in the reason given for denial of the Rule 60(b) motion was not prejudicial.
 
 IV. THE MERITS
 
 32
 The Union also contests (although half-heartedly under the circumstances) the district court order enjoining arbitration under the appellate procedure of SUB. It contends that the court should have directed unrestricted arbitration.
 
 
 33
 As we noted earlier, SUB clearly limits the Board's authority to resolve issues.
 
 
 34
 Not only is Section 5 of Article X of SUB entitled "Procedure for Appeals by Applicants," but 5(b) provides:
 
 
 35
 (b) In ruling upon appeals, the Board shall have no authority to waive, vary, qualify or alter in any manner the eligibility requirements set forth in the Plan, the procedure for applying for Weekly Supplemental Benefits or Separation Payments set forth therein, or any other provision of the Plan, and shall have no jurisdiction other than to determine, on the basis of the facts presented, and in accordance with the provisions of the Plan:
 
 
 36
 (1) whether the appeal to the Board was made within the time and in the manner specified in this Section;
 
 
 37
 (2) whether the Applicant is eligible for a Benefit or Separation Payment and, if so, the amount thereof.
 
 
 38
 (3) whether a protest by the Company of an Applicant's State System Unemployment Benefit is frivolous.
 
 Section 5(d) provides in part:
 
 39
 The appeals procedure set forth in this Section may be employed only for the purposes specified in the Plan.
 
 Section 5(e) provides:
 
 40
 The Board shall have no power to determine any question arising under the Collective Bargaining Agreement even though relevant to the issues before the Board. Such questions shall be determined through the regular grievance procedures provided for in the Collective Bargaining Agreement and all such determinations shall be accepted by the Board.
 
 
 41
 The district court considered whether, independently of SUB, 29 U.S.C. Sec. 186(c)(5)(B) was applicable here, and concluded that the issue between the parties was not a dispute over "administration of such fund" within the meaning of the statute.
 
 
 42
 As noted by Judge Grant, different approaches have been employed in determining whether an issue is one of fund administration. The Second Circuit interprets administration as encompassing those issues which the trustees have the power to decide under the trust agreement. Mahoney v. Fisher, 277 F.2d 5, 6 (2nd Cir.1960). The Eighth Circuit requires that the issue concern day-to-day matters. Farmer v. Fisher, 586 F.2d 1226, 1229-30 (8th Cir.1978). While the Tenth Circuit applies the case-by-case approach, the latest case held that Plan administration concerned the day-to-day matters of the Plan, not extraordinary matters. Ader v. Hughes, 570 F.2d 303, 307 (10th Cir.1978). The issue here was the extent of the employer's financial obligation to contribute to the Plan, and clearly not one of administration of the fund.
 
 
 43
 The Union also challenges the order of the district court granting Torrington's motion under Rule 10(e), F ED.R.APP.P. to exclude two depositions from the record on Appeal No. 84-2861. The Union says these depositions will support its claim that it preserved its right to arbitrate under Article X, CBA. At best they would be only marginally relevant to the appeal, if relevant at all. In any event, a deposition which was not admitted into evidence, not considered by the district court, or added by stipulation of both parties to the record on appeal, cannot be included in the record on appeal. Charles v. Judge & Dolph, Ltd., 263 F.2d 864, 867 (7th Cir.1959); Dictograph Products Co. v. Sonotone Corp., 231 F.2d 867 (2nd Cir.1956). See also United States v. City of Brookhaven, 134 F.2d 442 (5th Cir.1943).
 
 
 44
 The judgment entered July 26, 1984 is modified so as to include a declaration that the Union's claim is not rendered nonarbitrable by the exception of "insurance provisions" in Article X of CBA. As so modified, the judgment is affirmed. The orders appealed from are affirmed. Costs on appeal are awarded to appellees.