

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-6-1999

# Bell Atl PA v. Communications

Precedential or Non-Precedential:

Docket 98-1231

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Bell Atl PA v. Communications" (1999). *1999 Decisions.* Paper 3.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/3

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 6, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 98-1231

BELL ATLANTIC - PENNSYLVANIA, INC.

v.

COMMUNICATIONS WORKERS OF AMERICA,
AFL-CIO, LOCAL 13000; COMMUNICATIONS
WORKERS OF AMERICA, AFL-CIO, DISTRICT 13,
        Appellants

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 97-cv-04179)
District Judge: Honorable Clarence C. Newcomer

Argued: November 16, 1998

Before: BECKER, Chief Judge, GREENBERG, Circuit Judges
and McLAUGHLIN, District Judge.*

(Filed January 6, 1999)

        PAULA R. MARKOWITZ, ESQUIRE
        (ARGUED)
        Markowitz & Richman
        121 South Broad Street
        Suite 1100
        Philadelphia, PA 19107

Counsel for Appellants

_____

*Honorable Sean J. McLaughlin, United States District Judge for the
Western District of Pennsylvania sitting by designation.

LAWRENCE S. COBURN, ESQUIRE
(ARGUED)
Pepper, Hamilton & Scheetz
18th & Arch Streets
3000 Two Logan Square
Philadelphia, PA 19103-2799

Counsel for Appellees

OPINION OF THE COURT

BECKER, Chief Judge.

This labor arbitration appeal presents the question whether the District Court erred in finding that it was the role of the court--and not an arbitrator--to determine whether the underlying dispute between the parties was subject to one particular arbitration procedure rather than another. We conclude that this issue--which of two arbitration procedures in a collective bargaining agreement applies to a particular labor dispute--is one of "procedural arbitrability," and therefore should be decided by an arbitrator and not a federal court. We therefore reverse.

I. Facts and Procedural History

The parties to this dispute are Bell Atlantic-Pennsylvania ("Bell") and a local and regional body of the Communications Workers of America (collectively "CWA"). Bell and the CWA, or their predecessors, have been parties to a collective bargaining agreement ("CBA") for more than half a century. The version of the CBA that is material to this appeal was modified and extended on August 6, 1995, with an effective ending date of August 8, 1998. Under the CBA, the parties have agreed to arbitrate most disputes under the contractual arbitration procedure (the "regular arbitration" procedure). However, under the CBA, some disputes that might arise are explicitly excluded from arbitration, while others may only be arbitrated under a special arbitration procedure (the "expedited arbitration" procedure). Finally, some disputes may be arbitrated under either arbitration procedure.

The dispute underlying the present appeal, which is not before us (and was not before the District Court), revolves around Bell's reorganization of certain of its administrative units. Following negotiations between the parties pursuant to the CBA's administrative-reorganization provisions, Bell and the CWA reached an impasse, and Bell implemented its proposed reorganization. The Union claimed that this reorganization violated the CBA in a number of respects, including alleged violations of the CBA provisions governing employee transfers, involuntary assignments, overtime, and definition of employee duties. It requested that these disputes be submitted to the regular arbitration procedure of the CBA. Bell refused, arguing that the administrative-reorganization provision of the CBA authorized the Union to use only the expedited arbitration procedure to resolve such disputes.

Bell then sued in the District Court, alleging that the Union had violated the CBA by insisting on submitting the above dispute to regular arbitration, and seeking a declaratory judgment that such disputes could only be submitted to the expedited arbitration procedure.[1] Upon cross-motions for summary judgment, the District Court granted Bell's motion, holding that (1) the determination whether the parties' dispute must be submitted to the expedited arbitration procedure and not the regular procedure was a matter of "substantive arbitrability," and therefore for the court to decide; (2) Bell was not required to arbitrate its allegation that the Union had violated the CBA; and (3) the CBA provision in question required the Union to submit the underlying dispute to the expedited arbitration procedure and not the regular arbitration procedure. The Union filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. S 1291.[2]

_____

1. The District Court had jurisdiction pursuant to section 301 of the Labor-Management Relations Act, 29 U.S.C. S 185, the Declaratory Judgment Act, 28 U.S.C. SS 2201-2202, and 28 U.S.C. S 1331.

2. While we review for clear error a district court's factual determination
that a contractual dispute is arbitrable, see Lukens Steel Co. v. United Steelworkers, 989 F.2d 668, 672 (3d Cir. 1993), we exercise plenary review over the legal question presented here, i.e., whether a contractual dispute is one of substantive or procedural arbitrability.

II. The Collective Bargaining Agreement's Arbitration
    Provisions

The CBA at issue here includes a number of provisions
governing contract disputes between the parties. The
grievance-and-arbitration provision of the CBA provides:

> If, at any time, a controversy should arise between the
> Union and the Company regarding the true intent and
> meaning of any provision of this Agreement or
> regarding any claim that either party has not
> performed a commitment of this Agreement, the
> controversy may be presented for review in accordance
> with the [grievance provisions] of this Article. If the
> controversy is processed under these Sections and is
> not satisfactorily settled, the Union or the Company, by
> written notice specifying the Section of the Agreement
> alleged to be violated, may submit the question under
> dispute to arbitration in accordance with the provisions
> of Article 13 of this Agreement.

CBA S 10.07. Article 13, in turn, provides that "[t]here shall
be arbitrated only the matters specifically made subject to
arbitration by the provisions of this Agreement," id. S 13.01,
and that "[t]he procedure for arbitration is set forth in
Exhibit B," id. S 13.02.

Exhibit B provides, in relevant part:

> The procedure to be followed in instituting and
> conducting the arbitration of any matter subject to
> arbitration under the provisions of Article 13, shall be
> as follows, except that the tripartite board may be
> eliminated and an agency other than the American
> Arbitration Association may be substituted upon
> mutual agreement of the parties.

Id. S B1.01. The remaining parts of Article B1 contain the
details of the procedure "to be followed in instituting and
conducting the arbitration of any matter subject to
arbitration under the provisions of Article 13," including the
appointment of an arbitrator by each side and the selection
of an impartial third arbitrator.

Exhibit B also contains a procedure for "expedited
arbitration":

4

> In lieu of the procedures specified in Section B1 of this Agreement, any grievance involving the suspension of an individual employee, [with certain exceptions not here relevant,] shall be submitted to arbitration under the expedited arbitration procedure hereinafter provided within fifteen (15) calendar days after the filing of a request for arbitration. In all other grievances involving disciplinary action which are specifically subject to arbitration under Article 11 of this Agreement, both parties may, within fifteen (15) calendar days after the filing of the request for arbitration, elect to use the expedited arbitration procedure hereinafter provided. The election shall be in writing and, when signed by authorized representatives of the parties, shall be irrevocable. If no such election is made within the foregoing time period, the arbitration procedure in Section B1 shall be followed.

Id. S B2.01.

The underlying dispute in this case is governed, inter alia, by Article 39 of the CBA. Under Article 39, Bell must follow certain procedures when a reorganization is contemplated, including consulting with the Union. If these consultations fail to result in a reorganization agreement, Bell may implement its own plan. Under the provision at the heart of this case, "[i]f management implements procedures without the agreement of the Union, the Union may submit to expedited arbitration the question whether the procedures implemented are in compliance with the standards and requirements listed in [section] 39.05." Id. S 39.07.

III. Substantive and Procedural Arbitrability

The ultimate question presented by Bell's initial complaint is whether Article 39 requires the Union to use the expedited arbitration procedure to resolve the disputes surrounding Bell's administrative reorganization. However, a threshold question––one that is dispositive of this appeal ––is interposed, for when faced with a dispute involving labor arbitration, a federal court must first determine whether resolution of the disagreement is for the court or

for an arbitrator to undertake. In this case, Bell argued and the District Court found that the issue of which arbitration procedure applied to the parties' reorganization dispute was a matter properly for the court, and not an arbitrator, to decide. For the reasons that follow, we disagree.

A.

Disputes surrounding arbitration have often been divided into the categories of "substantive arbitrability" and "procedural arbitrability." Substantive arbitrability refers to the question whether a particular dispute is subject to the parties' contractual arbitration provision(s). Absent a clear expression to the contrary in the parties' contract, substantive arbitrability determinations are to be made by a court and not an arbitrator. Our national labor policy evinces a strong preference for peaceful, self-resolution of labor-management disputes, as explained in the famous "Steelworkers' Trilogy."[3] However, if an arbitrator were to decide the substantive arbitrability issue, a party objecting to having the underlying dispute submitted to arbitration on the ground that it did not consent to do so would already have its alleged intent (to not submit the dispute to arbitration) ignored. See Gateway Coal Co. v. United Mine Workers, 414 U.S. 368, 374 (1974) ("The law compels a party to submit his grievance to arbitration only if he has contracted to do so."); John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547 (1964) ("The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty."). Therefore, parties may be sent to arbitration only after the court so directing them is satisfied that this was their intent and that both parties consented to do so in their contractual agreement.

Once this threshold determination has been made by the court, i.e., once the court has discerned the parties' intent

_____

3. See United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 598-99 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 577-78 (1960); United Steelworkers v. American Mfg. Co., 363 U.S. 564, 566-67 (1960).

6

to submit their underlying dispute to arbitration, any further matters surrounding the dispute are to be submitted to the arbitration procedure. See Chauffeurs, Teamsters & Helpers, Local Union No. 765 v. Stroehmann Bros. Co., 625 F.2d 1092, 1093-94 (3d Cir. 1980) ("The court's role . . . [is] to determine whether the underlying subject matter of the grievance was arbitrable. Once that determination has been made the entire dispute must be resolved by the arbitrator." (citation omitted)). These other matters are labeled, perhaps underinclusively, procedural arbitrability issues, and are resolved as part of the arbitration procedure to which the parties have committed themselves, as a number of cases, arising in somewhat different scenarios but nonetheless instructive here, demonstrate. We set them forth in the margin.4

In its leading procedural arbitrability case, the Supreme

_____

4. See, e.g., International Union of Operating Eng'rs, Local 150 v. Flair Builders, Inc., 406 U.S. 487, 491-92 (1972) ("[O]nce a court finds that, as here, the parties are subject to an agreement to arbitrate, and that agreement extends to `any difference' between them, then a claim that particular grievances are barred by laches is an arbitrable question under the agreement."); Independent Ass'n of Continental Pilots v. Continental Airlines, 155 F.3d 685, 696 (3d Cir. 1998) (holding that "determination of the parameters and scope" of an arbitrator's award, which involved "an analysis of the interplay" between various contract provisions, was a matter for the arbitrator to decide, not the courts); Whittle v. Local 641, Int'l Bhd. of Teamsters, 56 F.3d 487, 490 n.2 (3d Cir. 1995) ("Timeliness is a procedural issue, and in an arbitration proceeding, procedural issues are for the arbitrator to decide."); Troy Chem. Corp. v. Teamsters Union Local No. 408, 37 F.3d 123, 127-28 (3d Cir. 1994) ("Once the court decided that the discharges were subject to arbitration, it should have held that the dispute was arbitrable and that matters relating to compliance with the grievance procedure or a waiver were matters for the arbitrator."); Stroehmann Bros. Co., 625 F.2d at 1093 ("[T]he significance of a default in literal compliance with a contractual procedural requirement calls for a determination of the intention of the parties to the contract. Such a determination . . . ., under the governing case law, [is a matter] for the arbitrator."); Controlled Sanitation Corp. v. District 128, Int'l Ass'n of Machinists & Aerospace Workers, 524 F.2d 1324, 1331 (3d Cir. 1975) (holding that company's contention that union repudiated the agreement to arbitrate a particular dispute was a matter for the arbitrator, and not the court, to decide).

Court explained why procedural arbitrability issues are best left to the arbitrator:

> Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration.

John Wiley & Sons, 376 U.S. at 557. Therefore, procedural issues are to be resolved by the arbitrator, once (and only after) the court determines that the underlying dispute is one the parties have agreed to submit to the arbitrator.

B.

The District Court in this case believed that the threshold question before it was "whether the subject matter of the instant dispute is covered and/or excluded from regular arbitration under Sections 10.07 and B1." Bell Atl.-Pa., Inc. v. Communications Workers, Local 13000, No. CIV.A.97-4179, 1998 WL 84017, at *9 (E.D. Pa. Feb. 26, 1998) (emphasis added). Put another way, the court found that "the issue presented is whether the Company agreed to arbitrate Article 39 disputes through Section B1 regular arbitration--a question of substantive arbitrability." Id. (emphasis added). However, the actual threshold question before us--and given our resolution of this issue, the only one before us--is whether Bell agreed to arbitrate Article 39 disputes. This is both a question of substantive arbitrability and, given Bell's concession that the reorganization disputes are subject to some arbitration procedure, a foregone conclusion. Bell does not contend that it did not agree to arbitrate disputes arising from its administrative reorganizations. Rather, it disagrees with the Union's claim that these disputes are subject to a particular arbitration procedure. This disagreement, however, is not one of substantive arbitrability.

The fundamental error of the District Court was its expansion of the basic substantive arbitrability question

8

("whether or not the company was bound to arbitrate"5) into a much broader inquiry, one that falls outside of the substantive arbitrability domain ("whether the particular arbitration clause covers the subject matter of the particular dispute between the parties"6). Such an expansion is unwarranted. It is inconsistent with this Court's and the Supreme Court's precedents in this area and it is not dictated by the policy concerns behind the substantive arbitrability doctrine.7

_____

5. AT&T Techs., Inc. v. Communications Workers, 475 U.S. 643, 649 (1986) (internal quotations omitted).

6. Bell Atl.–Pa., 1998 WL 84017, at *10.

7. In support of its position, Bell cites two cases ostensibly involving multiple arbitration procedures like those that exist here. The first, Adams v. Gould, Inc., 687 F.2d 27 (3d Cir. 1982), is completely inapposite. The "sole question" in that interlocutory appeal was "whether certain individual employees . . . [were] bound by the results of an arbitration between their employer and their union and thereby barred from bringing their complaint in federal court." Id. at 28. In Adams, the union had arbitrated a grievance under one of two arbitration clauses, and an arbitration award was eventually issued. Individual employees then sought to litigate in federal court the same dispute that was the subject of the arbitration. We reversed the district court's denial of summary judgment on behalf of the employer, concluding that the employees were bound by the results of the arbitration. See id. at 33. One of the grounds that the individual employees urged in support of their argument that they were not bound by the arbitration award was that the parties (i.e., the employer and union) had used the incorrect arbitration procedure. See id. at 32. There is no indication that the parties actually discussed this issue during the arbitration or that the arbitrator adjudicated the issue. Rather, it arose only in the collateral context of our examining the employees' claim that they were not bound by the already–issued arbitration award. Not surprisingly, given that no alternative forum existed for resolving this issue, we reached (and rejected) it. We were in no way faced squarely with the issue presented here: must the court, rather than an arbitrator, determine which is the appropriate arbitration procedure when the parties agree that their dispute will be arbitrated at some future date?

The other case relied on by Bell comes from the Seventh Circuit. See Torrington Co. v. Local Union 590, Int'l Union of Auto. Workers, 803 F.2d 927 (7th Cir. 1986). Although the court in Torrington decided which of two arbitration provisions applied to the parties' underlying dispute,

The District Court invoked these policy concerns when it found that submitting to an arbitrator the issue of which arbitration provision applies to the parties' dispute "would possibly deter other Unions and employe[rs] from entering into such agreements to arbitrate." Bell Atl.–Pa., 1998 WL 84017, at *10 n.8. The District Court's concern is simply misplaced: Bell is bound to arbitrate the underlying dispute no matter what the court decides. Allowing an arbitrator to determine which procedure will be used does not force Bell to arbitrate any disputes that it believed it was withholding from arbitration––unlike the situation when the basic determination of whether or not an underlying dispute is arbitrable is sent to an arbitrator.

What Bell asks us to do here is to greatly expand the class of substantive arbitrability cases. In its view, the disagreement between the parties––whether a dispute will be resolved through arbitration procedure A or arbitration procedure B––is no different from the traditional substantive arbitrability question––whether a dispute will be resolved through an arbitration procedure or through some other means, such as litigation, a strike, or a lockout. This argument, however, has no logical limits. If the present case involves substantive arbitrability, why not also a case asking whether a dispute is to be resolved through an arbitration procedure or an unexhausted grievance procedure? See John Wiley & Sons, 376 U.S. at 556–57 (employer's argument that union must first submit dispute to grievance procedure was a matter for the arbitrator to decide).

_____

neither party argued that this was an issue for the arbitrator and not for the court to decide. Further, the union originally sought to litigate in court the underlying dispute, arguing that none of the arbitration provisions applied, presenting the court with a clear substantive arbitrability problem. Finally, the court found that the arbitration procedure that the union (subsequently) argued should be used clearly and expressly did not apply to the underlying dispute. See id. at 931. This distinguishes that provision from the regular arbitration provision in the present case. Cf. PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 513 (3d Cir. 1990) (holding that the "plain language" of the parties' contract, which limited the cases "eligible for submission to arbitration,"
rendered the underlying dispute not arbitrable).

We find the present case functionally indistinguishable from (and controlled by) those cases in which the parties agree that an underlying dispute is arbitrable, but disagree about the effect of laches, waiver, exhaustion of pre-arbitration steps, limitations periods, or other "procedural" issues. See supra note 4. Bell and its Union agree that disputes over the reorganization of administrative groups may be resolved through arbitration; they simply disagree on the procedures to be followed. The Union has asked that both of these issues--the reorganization dispute and the procedure to be followed--be submitted to an arbitrator, and we hold that this is the proper course for the parties. See John Wiley & Sons, 376 U.S. at 558 (holding that the court must send the parties to arbitration in "cases in which arbitrability of the subject matter is unquestioned but a dispute arises over the procedures to be followed").8

The District Court's judgment will be reversed and this case remanded for further proceedings consistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

_____

8. Because we hold that the District Court erred in finding that the question of which arbitration procedure should be followed was an issue for the court, and not an arbitrator, to decide, we do not reach the other issues decided by the District Court. This includes its holding that Bell was not required to submit its allegation that the Union violated the CBA to an arbitrator, and the District Court's ultimate determination regarding the meaning of section 39.07 of the CBA. The first of these issues is mooted by our resolution of this appeal, while the second issue, as we have held above, is not for us (or the District Court), but for the arbitrator to decide.

11